MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
JOSE ADRIAN SAN JUAN TOLENTINO
and WILSON BENJAMIN VASQUEZ
RAMOS, *individually and on behalf of others
similarly situated,*

       *Plaintiffs*,

   -against-

HERMES B NY LLC (D/B/A EMPANADA
MAMA EXPRESS), PGNV LLC (D/B/A
EMPANADA MAMA), and SOCRATES
NANAS ,

       *Defendants.*
-------------------------------------------------------X

       **COMPLAINT**


   **COLLECTIVE ACTION UNDER**
  **29 U.S.C. § 216(b) AND RULE 23**
     **CLASS ACTION**

     **ECF Case**

   Plaintiffs Jose Adrian San Juan Tolentino and Wilson Benjamin Vasquez Ramos ,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Hermes B NY LLC (d/b/a Empanada Mama Express ), PGNV LLC (d/b/a Empanada

Mama), ("Defendant Corporations") and Socrates Nanas, ("Individual Defendant"), (collectively,

"Defendants"), allege as follows:

<u>**NATURE OF ACTION**</u>

  1.  Plaintiffs are former employees of Defendants Hermes B NY LLC (d/b/a Empanada

Mama Express), PGNV LLC (d/b/a Empanada Mama), and Socrates Nanas.

2.      Defendants own(ed), operate(d), or control(led) three restaurants and catering services, located at 95 Allen Street, New York, New York 10002, and 189 E Houston St New York, NY 10002 under the name "Empanada Mama Express" and at 765 9th Avenue New York, NY 10019 under the name "Empanada Mama".

3.      Upon information and belief, individual Defendant Socrates Nanas, serves or served as owner, manager, principal, or agent of Defendant Corporations and, through these corporate entities, operates or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers at the restaurants located at 95 Allen Street, New York, New York 10002, 189 E Houston Street, New York, NY 10002 and at 765 9th Avenue New York, NY 10019.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cleaning the floor,  carpet matts, the walls, the windows  and the bathrooms, putting sauces in containers, moving and packing boxes of tomatoes, apples, bananas, chilies, sodas from the company van to the basement,  cleaning the curb outside with soap and water, labeling bags for takeout and delivery, cutting meat  and vegetables, cleaning at the end of the night, washing trays, taking out trash, mopping and sweeping, and stocking merchandise (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants paid Plaintiffs at the lowered tip-credited rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate.

13.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

14.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.     Plaintiffs seek certification of this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate three restaurants and catering services located in this district. Further, Plaintiffs were employed by Defendants in this district.

## **PARTIES**

### *Plaintiffs*

20.     Plaintiff Jose Adrian San Juan Tolentino ("Plaintiff San Juan" or "Mr. San Juan") is an adult individual residing in Bronx County, New York.

21.     Plaintiff San Juan was employed by Defendants from approximately November 2013 until on or about December 31, 2014 and from approximately November 2015 until on or about November 18, 2019.

22.     Plaintiff Wilson Benjamin Vasquez Ramos ("Plaintiff Vasquez" or "Mr. Vasquez") is an adult individual residing in Bronx County, New York.

23.     Plaintiff Vasquez was employed by Defendants at Empanada Mama from approximately June 2013 until on or about December 2019.

### *Defendants*

24.     At all relevant times, Defendants owned, operated, or controlled three restaurants and catering services, located at 95 Allen Street, New York, New York 10002 under the name "Empanada Mama Express" and at 765 9th Avenue New York, NY 10019 under the name "Empanada Mama".

25.     Upon information and belief, Hermes B NY LLC (d/b/a Empanada Mama Express) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 95 Allen Street, New York, New York 10002.

26.     Upon information and belief, PGNV LLC (d/b/a Empanada Mama) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 765 9th Avenue New York, NY 10019.

27.     Defendant Socrates Nanas is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Socrates Nanas is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Socrates Nanas possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

### *Defendants Constitute Joint Employers*

28.     Defendants operate three restaurants and catering services located in the Lower East Side and the Hell's Kitchen sections of Manhattan in New York City.

29.     Individual Defendant, Socrates Nanas, possesses operational control over Defendant Corporations, possesses ownership interests in Defendant Corporations, and controls significant functions of Defendant Corporations.

30.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

32.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

33.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

34.     Upon information and belief, Individual Defendant Socrates Nanas operates Defendant Corporations as either alter egos of himself and/or fails to operate Defendant Corporations as entities legally separate and apart from himself, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for his own benefit as the sole or majority shareholder,

e)  operating Defendant Corporations for his own benefit and maintaining control over these corporations as closed Corporations,

f)  intermingling assets and debts of his own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect his own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

35.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

36.    In each year from 2015 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

37.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

38.    Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

39.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Jose Adrian San Juan Tolentino*

40.    Plaintiff San Juan was employed by Defendants from approximately November 2013 until on or about December 31, 2014 and from approximately November 2015 until on or about November 18, 2019.

41.    Defendants ostensibly employed Plaintiff San Juan as a delivery worker.

42.    However, Plaintiff San Juan was also required to spend a significant portion of his work day performing the non-tipped duties described above.

43.    Although Plaintiff San Juan ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

44.    Plaintiff San Juan regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

45.    Plaintiff San Juan's work duties required neither discretion nor independent judgment.

46.    Throughout his employment with Defendants, Plaintiff San Juan regularly worked in excess of 40 hours per week.

47.    From approximately November 2015 until on or about December 2018, Plaintiff San Juan worked approximately 39-40 hours per week, 6 days per week.

48.    From approximately January 2019 until on or about November 17, 2019, Plaintiff San Juan worked approximately 37 hours per week, 6 days per week.

49.    Throughout his employment, Defendants paid Plaintiff San Juan his wages by check.

50.    From approximately November 2015 until on or about December 2015, Defendants paid Plaintiff San Juan $6.50 per hour.

51.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff San Juan $7.50 per hour for his regular hours and $12.00 per hour for some of his overtime hours.

52.    From approximately January 2017 until on or about February 2017, Defendants paid Plaintiff San Juan $9.15 per hour and $14.64 per hour for some of his overtime hours.

53.    From approximately February 2017 until on or about October 2017, Defendants paid Plaintiff San Juan $11.00 per hour and $14.64 per hour for some of his overtime hours.

54.    From approximately October 2017 until on or about January 2018, Defendants paid Plaintiff San Juan $11.55 per hour.

55.    From approximately February 2018 until on or about December 2018, Defendants paid Plaintiff San Juan $13.65 per hour.

56.    From approximately January 2019 until on or about March 2019, Defendants paid Plaintiff San Juan $15.75 per hour.

57.    From approximately March 2019 until on or about November 2019, Defendants paid Plaintiff San Juan $12.50 per hour.

58.    Although Defendants granted Plaintiff San Juan 30 minute meal breaks, they constantly required him to stop eating and go work; nevertheless, Defendants deducted every meal break from Plaintiff San Juan's weekly wages regardless of whether they had interrupted the breaks.

59.    Plaintiff San Juan was never notified by Defendants that his tips were being included as an offset for wages.

60.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff San Juan's wages.

61.    Defendants withheld a portion of Plaintiff San Juan's tips; specifically, Defendants withheld a considerable percentage of the tips customers wrote in for Plaintiff San Juan whenever he delivered large delivery orders.

62.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff San Juan regarding overtime and wages under the FLSA and NYLL.

63.    Defendants did not provide Plaintiff San Juan an accurate statement of wages, as required by NYLL 195(3).

64.    In fact, Defendants adjusted Plaintiff San Juan's paystubs so that they reflected inaccurate hours worked. More specifically, Defendants deducted time for lunch breaks from Plaintiff San Juan's paychecks, that they never allowed him to take.

65.     At all relevant times, Defendants did not give any notice to Plaintiff San Juan, in English and in Spanish (Plaintiff San Juan's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

66.     Defendants required Plaintiff San Juan to purchase "tools of the trade" with his own funds—including three bicycles and batteries for his electric bicycle.

*Plaintiff Wilson Benjamin Vasquez Ramos*

67.     Plaintiff Vasquez was employed by Defendants from approximately June 2013 until on or about December 2019.

68.     Defendants ostensibly employed Plaintiff Vasquez as a delivery worker.

69.     However, Plaintiff Vasquez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

70.     Although Plaintiff Vasquez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

71.     Plaintiff Vasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

72.     Plaintiff Vasquez's work duties required neither discretion nor independent judgment.

73.     Throughout his employment with Defendants, Plaintiff Vasquez regularly worked in excess of 40 hours per week.

74.     From approximately January 2015 until on or about March 2015, Plaintiff Vasquez worked from approximately 7:00 p.m. until on or about 7:00 a.m., 6 days per week  (typically 72 hours per week).

75.     From approximately April 2015 until on or about December 2015, Plaintiff Vasquez worked approximately 38 to 39 hours per week, 5 days per week.

76.     From approximately January 2016 until on or about December 2016, Plaintiff Vasquez worked approximately 37 hours per week, 5 days per week.

77.     From approximately January 2017 until on or about December 2017, Plaintiff Vasquez worked approximately 34 to 34.5 hours per week, 5 days per week.

78.     From approximately January 2018 until on or about December 2018, Plaintiff Vasquez worked approximately 31 hours per week, 5 days per week.

79.     From approximately January 2019 until on or about December 2019, Plaintiff Vasquez worked from approximately 16-17 hours per week, 3 or 4 days per week.

80.     From approximately October 2014 until on or about March 2015, Defendants paid Plaintiff Vasquez his wages in cash.

81.     From approximately April 2015 until on or about December 2019, Defendants paid Plaintiff Vasquez his wages by check.

82.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Vasquez $6.50 per hour for his regular hours and $12.38 per hour for some of his overtime hours.

83.     From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Vasquez $7.50 per hour for his regular hours and $12.00 per hour for some of his overtime hours.

84.     From approximately January 2017 until on or about February 2017, Defendants paid Plaintiff Vasquez $9.15 per hour.

85.     From approximately February 2017 until on or about December 2017, Defendants paid Plaintiff Vasquez $11.00 per hour for his regular hours and $14.65 for some of his overtime hours.

86.     From approximately December 2017 until on or about January 2018, Defendants paid Plaintiff Vasquez $11.55 per hour.

87.     From approximately February 2018 until on or about December 2018, Defendants paid Plaintiff Vasquez $13.65 per hour.

88.     From approximately January 2019 until on or about March 2019, Defendants paid Plaintiff Vasquez $15.75 per hour.

89.     From approximately March 2019 until on or about December 2019, Defendants paid Plaintiff Vasquez $12.50 per hour.

90.     Plaintiff Vasquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

91.     For example, from approximately December 2014 until on or about March 2015, Defendants required Plaintiff Vasquez to work an additional half hour to one hour past his scheduled departure time regularly, and did not pay him for the additional time he worked.

92.     Although Defendants granted Plaintiff Vasquez 30 minute meal breaks, he was never able to take the breaks because they always required him to continue working when the place was busy; nevertheless, Defendants deducted every meal break from Plaintiff Vasquez's weekly wages regardless of the fact that his work obligation made him unable to take the breaks.

93.     Plaintiff Vasquez was never notified by Defendants that his tips were being included as an offset for wages.

94.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vasquez's wages.

95.    Defendants withheld a portion of Plaintiff Vasquez's tips; specifically, Defendants withheld a considerable percentage of tips from regular orders and from catering orders.

96.    Defendants took improper and illegal deductions from Plaintiff Vasquez's wages; specifically, Defendants deducted the lunch breaks he was unable to take and the entire price of every food order which the clients claimed were mistaken from Plaintiff Vasquez's wages.

97.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vasquez regarding overtime and wages under the FLSA and NYLL.

98.    Defendants did not provide Plaintiff Vasquez an accurate statement of wages, as required by NYLL 195(3).

99.    In fact, Defendants adjusted Plaintiff Vasquez's paystubs so that they reflected inaccurate wages and hours worked; specifically, Defendants deducted time for lunch breaks that they never allowed him to take from Plaintiff Vasquez's paychecks.

100.    At all relevant times, Defendants did not give any notice to Plaintiff Vasquez, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

101.    Defendants required Plaintiff Vasquez to purchase "tools of the trade" with his own funds—including 2 bicycles, 4 electric bicycles, and bicycle equipment.

*Defendants' General Employment Practices*

102.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week

without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

103.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

104.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

105.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

106.    Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

107.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

108.     Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

109.    At all relevant times, Plaintiffs and all other tipped workers were paid at the lowered tip-credit rate by Defendants.

110.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

111.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

112.    At all relevant times, in violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was at the lowered tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

113.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

114.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

115.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

116.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

117.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

118.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

119.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

120.    From approximately October 2014 until on or about March 2015, Defendants paid Plaintiff Vasquez his wages in cash. From approximately April 2015 until on or about December 2019, Defendants paid Plaintiff Vasquez his wages by check.

121.    Throughout his employment, Defendants paid Plaintiff San Juan his wages by check.

122.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

123.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

124.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

125.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

126.    At all relevant times, Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

127.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period").

128.    At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

129.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**FEDERAL RULE 23 CLASS ACTION ALLEGATIONS**

130.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

131.    Plaintiffs bring their New York Labor Law minimum wage, wage deduction and liquidated damages claims on behalf of all persons who were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

132.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

133.    There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)  Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage within the meaning of the New York Labor Law;

e)  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

f) At what common rate, or rates subject to common methods of calculation, were Defendants required to pay the class members for their work; and

g) What were the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

134. The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

135. The representative parties will fairly and adequately protect the interests of the Class and had no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

136. The common questions of law and fact predominate over questions affecting only individual members.

137. A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

138.    Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

### **FIRST CAUSE OF ACTION**

### **VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

139.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

141.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

142.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

143.    Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class Members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

144.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

145.    Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class Members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

148.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

149.    Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

150.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

151.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

152.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 Class Members) less than the minimum wage.

153.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

154.     Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

155.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

156.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

157.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

158.     Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

159.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

160.     Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

161.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

162.     Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

163.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.     Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

165.     Defendants are liable to each Plaintiff (and the FLSA and Rule 23 Class Members) in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

166.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.    With each payment of wages, Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 Class Members) with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

168.    Defendants are liable to each Plaintiff (and the FLSA and Rule 23 Class Members) in the amount of $5,000, together with costs and attorneys' fees.

<u>**EIGHTH CAUSE OF ACTION**</u>

**RECOVERY OF EQUIPMENT COSTS**

169.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170.    Defendants required Plaintiffs (and the FLSA and Rule 23 Class Members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

171.    Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

<u>**NINTH CAUSE OF ACTION**</u>

**UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

172.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.    At all relevant times, Defendants were Plaintiffs' (and the FLSA and Rule 23 class members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

174.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

175.    Defendants unlawfully misappropriated a portion of Plaintiffs' (and the FLSA and Rule 23 Class Members') tips that were received from customers.

176.    Defendants knowingly and intentionally retained a portion of Plaintiffs' (and the FLSA and Rule 23 Class Members') tips in violations of the NYLL and supporting Department of Labor Regulations.

177.    Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

**TENTH**
**CAUSE OF ACTION**

**UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION**

**OF THE NEW YORK LABOR LAW**

178.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

179.    At all relevant times, Defendants were Plaintiffs' (and the FLSA and Rule 23 Class Members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

180.    Defendants made unlawful deductions from Plaintiffs' (and the FLSA and Rule 23 Class Members') wages; specifically, Defendants deducted 30 minutes daily from Plaintiffs' wages for meal breaks that they didn't take.

181.    The deductions made from Plaintiffs' (and the FLSA and Rule 23 Class Members') wages were not authorized or required by law.

182.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' (and the FLSA and Rule 23 Class Members') wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

183.    Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class Members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class Members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule

23 Class Members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 Class Members;

(f)     Awarding Plaintiffs and the FLSA and Rule 23 Class Members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA and Rule 23 Class Members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the Rule 23 Class Members);

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the Rule 23 Class Members);

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs and the Rule 23 Class Members);

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' and the Rule 23 Class Members') compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs and the Rule 23 Class Members);

(m)     Awarding Plaintiffs and the Rule 23 Class Members) damages for the amount of

unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs (and the Rule 23 Class Members) damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs (and the Rule 23 Class Members) liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA and Rule 23 Class Members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA and Rule 23 Class Members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

       January 11, 2021

                                        MICHAEL FAILLACE & ASSOCIATES, P.C.

By:        /s/ Michael Faillace      
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 10, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Wilson Benjamin Vasquez Ramos

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     10 de Diciembre

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 1, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Jose Adrian San Juan Tolentino

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              1 de Noviembre 2019

*Certified as a minority-owned business in the State of New York*