# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E. 42ⁿᵈ Street, Suite 4510                                                    Telephone: (212) 317-1200
New York, New York 10165                                                  Facsimile: (212) 317-1620
————

September 19, 2021

**VIA ECF**

Honorable Gregory H. Woods
United States Judge
500 Pearl St.
New York, NY 10007

Re:  **San Juan Tolentino et al v. Hermes B NY LLC et al**
1:21-cv-00198-GHW

Your Honor:

This office represents the Plaintiffs in the above referenced matter.  Plaintiffs write jointly with Defendants to submit this letter setting forth our views on why the agreed upon settlement in this matter is fair.

The parties have agreed to a negotiated settlement ("Agreement") after extensive settlement discussions during mediation.  A copy of the Agreement is attached hereto as "Exhibit A."  We therefore ask the Court to approve the settlement pursuant to *Cheeks v. Freeport Pancake House*, Inc., 796 F.3d 199 (2d Cir. 2015).

Plaintiffs brought this suit alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), violations of the New York Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and violations of the 'spread of hours' and overtime wage orders of the New York Commission of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).

Plaintiffs allege they were employed as delivery workers at the restaurants located at 95 Allen Street, New York, New York 10002, 189 E Houston Street, New York, NY 10002 and at 765 9th Avenue New York, NY 10019.  They also allege Defendants engaged in a wide variety of FLSA and NYLL violations, including failure to pay appropriate minimum wage and overtime, failure to pay spread of hours pay, unauthorized deductions from wages and gratuities, and failure to provide annual notice and wage statements.

Defendants deny these claims and maintain that they properly compensated Plaintiffs at all times.

## I.      The Proposed Settlement is Fair and Reasonable

The factors the Court examines when assessing the fairness of an FLSA settlement are: "(1) the plaintiffs['] range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel;

*Certified as a minority-owned business in the State of New York*

September 21, 2021
Page 2

(5) the possibility of fraud or collusion." *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The settlement here satisfies these five factors.

### A. The Settlement Falls Under the Range of Possible Recovery

Under the proposed settlement, Defendants will pay $94,500 to settle all claims through a single payment. Plaintiffs allege they are entitled to back wages of approximately $81,801.01 from Defendants. Plaintiffs estimate that if they had recovered in full for their claims, exclusive of attorney's fees, they would be entitled to approximately $391,617.46 A copy of Plaintiffs' damages chart, breaking down each amount sought from Defendants, is attached as "Exhibit B."

Defendants dispute that Plaintiffs are entitled to these damages as they have records that demonstrate that the majority of Plaintiffs did not work spread of hours and overtime. Defendants also dispute that Plaintiffs would be entitled to the full minimum wage instead of the tipped minimum wage.

The proposed settlement reflects 24.13% of Plaintiffs' best-case scenario for claims of unpaid wages. Defendants contend that Plaintiffs have no damages in light of the fact that they maintained records regarding Plaintiffs' time worked and compensation. Accordingly, given, the defenses the Defendants would raise should this matter continue it is a fair and reasonable settlement resolving the *bona fide* dispute between the parties.

### B. The Settlement Will Enable the Parties to Avoid the Burden of Litigation

Should the case not settle, the Parties will have to engage in a significant amount of discovery. This will require them to obtain and extensively analyze Defendants' time and payroll records from the statutory period. As well, to the extent that Plaintiff alleges a tip misappropriation claim Plaintiff will need to examine an extensive amount of tip-related information that Defendants will produce. Discovery will be burdensome for Defendants too because they must gather records to respond to Plaintiffs' discovery requests. This is no small task. Additionally, both parties will need to bear the time and expense of other non-document related discovery such as depositions. Beyond that, the Parties face potential motion practice, both dispositive and otherwise as well as a potential trial. All of these things are burdensome and success for either party is by no means guaranteed.

As well, litigation is not an easy thing for a party to go through. Accordingly, no matter who wins at the end of the day, Plaintiffs and Defendants will suffer stress, anxiety, and other negative emotional effects if this case continues.

Settlement ameliorates all of the foregoing considerations.

### C. Risk of Litigation

Defendants risk an adverse judgment against them if Plaintiffs prevail. Because Plaintiffs claim that they were not sufficiently compensated for overtime and their tips were misappropriated

September 21, 2021
Page 3

the judgment could be quite high.  At the same time, Plaintiffs face significant litigation risks. First, based upon records that Defendants obtained and provided, a fact-finder could find that Plaintiffs worked fewer hours than they allege (and, therefore, Plaintiffs' recovery would be substantially diminished) or that they were properly paid.  So, either Plaintiffs win money (and Defendants have to pay money) or Plaintiffs lose (and Defendants pay no money).  In light of these litigation risks, the decision to forgo the burden and expense of trial is reasonable.

### D. The Settlement is A Product of Arms-Length Negotiation and There was No Fraud or Collusion

The Settlement was reached after the Parties each evaluated the strengths and the weaknesses of their cases alongside the cost of continued litigation. The negotiations took place between experienced wage and hour attorneys[1] with a well-known mediator, Theo Cheng, Esq.,[2] facilitating the settlement. The fact that the settlement was facilitated by a well-known mediator at arm's length also satisfies the fifth factor of having no fraud or collusion in the Settlement.

### II.    The Proposed Settlement Does Not Conflict with *Cheeks* Admonitions

The Agreement does not present any of the contain any of the problematic terms identified by the Second Circuit in Cheeks v. Freeport Pancake House problems. See Nieto v. Izzo Construction Corp., No. 15 Civ. 6958, 2018 WL 2227989, at *2 (E.D.N.Y. May 14, 2018). "These include (1) an overbroad general release that stretches way beyond the wage and hour claims in this case … (5) an overly broad non-disparagement clause that would prevent Plaintiff from speaking openly and honestly with other about his experience in litigating this case." Id. at 2-3.

The Agreement does not contain a confidentiality provision. And, the Agreement only provides for a release of NYLL and FLSA claims against Defendants up to the date of the signing of the Agreement. Ex. A ¶ 1. Releases limited to FLSA and NYLL claims avoid the type of language that the Second Circuit has characterized as overbroad. See Ezpino v. CDL Underground Specialists, Inc., No 14 Civ 3173, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017), adopted by, 2017 WL 3037406 (E.D.N.Y. July 17, 2017) (citations omitted).

Admittedly, the Agreement does contain a non-disparagement clause.  But, Additionally, the Agreement does not contain a non-disparagement clause or a no-reemployment/no-hire clause.in the Southern District, it has been widely accepted that, "'[N]ot every non-disparagement clause in an FLSA settlement is per se objectionable,' […] because 'plaintiff's may contract away their right to say things that are insulting or calumnious about the defendants.' […] (emphasis in original). Thus, so long as non-disparagement clauses contain 'a carve-out for truthful statements

---

[1] Both Plaintiffs' counsel and Defendants' counsel have handled scores of wage and hour cases in this District including individual Plaintiff cases, multi-Plaintiff cases, and class/collective actions.

[2] Mr. Cheng is an experienced wage and hour mediator who was assigned to this matter through the Southern District's mediation panel.  More information about Mr. Cheng can be found on his website: https://theocheng.com/.
Mr. Cheng spent significant time mediating this case to bring the parties to resolution, without charging a penny for his services.  The parties are grateful for Mr. Cheng's dedication to this matter and the donation of time that he could have spent working on other matters for which he would have obtained remuneration.

September 21, 2021
Page 4

about plaintiff's experience litigating their case,' they may be fair and reasonable." *Montenegro v. NMN Food LLC*, No. 18-CV-3153 (RA), 2018 WL 6618372, at *2 (S.D.N.Y. Dec. 18, 2018) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)).

Here, the non-disparagement clause is permissible because it contains a carve-out permitting Plaintiffs the ability to make truthful statements about their experience litigating this action. Moreover, the non-disparagement clause is all the more approvable because it mutually prevents the individual Defendant, Socrates Nanas, from disparaging Plaintiffs.

### III.   Plaintiff's Attorneys' Fees are Fair and Reasonable[3]

Under the settlement, and in accordance with his retainer agreement with the Plaintiffs, Plaintiffs' counsel will receive $37,800.00 from the settlement fund as attorney's fees and costs. This represents forty percent of the recovery in this litigation, as well as a reduction in fees from what is identified in Plaintiffs' retainer agreements, which provides that forty percent of Plaintiffs' recovery will be retained by the firm.

These rates are reasonable given the experience of the attorneys in wage and hour matters, and their performance in this case. *See Perez v. Platinum Plaza 400 Cleaners, Inc.,* Index No. 12-cv-9353 (PAC), 2015 U.S. Dist. LEXIS 78079, *3 n. 1 (S.D.N.Y. June 16, 2015) (awarding requested rates to Michael Faillace and one of his associates at this firm, Joshua Androphy, finding they had "demonstrated entitlement to these rates based on their experience in wage and hour litigation and their performance in this case").

While district courts in this Circuit have commonly limited attorneys' fees to 1/3 of the recovery in FLSA settlements, the Second Circuit Court of Appeals recently rejected such a proportionality rule. *Fisher v. S.D. Prot. Inc.*, 948 F.3d 593, 2020 U.S. App. LEXIS 3295 (2d Cir. Feb. 4, 2020). In *Fisher* the Second Circuit reversed a district court's presumption of a 33% limit as an outcome determinative factor on attorneys' fees in FLSA settlements. *Id.* The Second Circuit observed that if plaintiffs' attorneys were limited to such a proportional fee, no rational attorney would take small recovery or "run of the mill" cases and employees would be left with little redress for alleged violations. *Id.* 2020 U.S. App. LEXIS 3295, *17. Awarding attorneys' fees of 40% of the total settlement is reasonable and in accordance with *Fisher* and with Plaintiff's retainer agreement with his attorneys.

The practice in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "cross check." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). (noting that "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court, and instead "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case"). As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. Sewell v. Bovis Lend Lease, Inc., No. 09 Civ. 6548, 2012 WL 1320124, at *13 (S.D.N.Y. April 16, 2012). Here, Plaintiffs' Counsel's lodestar is

---

[3] For the purposes of this application only, Defendants take no position with respect to Plaintiffs' request for attorneys.

$7,229.25(Seven Thousand Two Hundred and Twenty-Nine Dollars and Twenty-Five Cents) Plaintiffs' Counsel requested fee applies a multiplier of 5.23 on the current lodestar amount. "Courts regularly award multiplier from two to six times the lodestar." *Weston et. al. v. TechSol, LLC*, No. 17 Civ. 0141, 2018 WL 4693527, at *9 (E.D.N.Y. Sept. 28, 2018) (collecting cases).

The Court should also consider whether the proposed attorneys' fees are reasonable based on: (1) time and labor expended by counsel; (3) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Here, there has been extensive time and labor expended by Plaintiff's counsel in the negotiation and acquisition of this settlement amount. (See Exhibit C). As stated above, should this Court reject the settlement, the Parties will be forced to proceed with the time and cost intensive process of discovery and litigation of which no party is guaranteed a favorable or even tolerable outcome. The requested fee is 40% of the settlement and represents a multiplier of 5.23 of the lodestar, which is reasonable in the Second Circuit. Additionally, there are no public policy issues that would arise from the approval of this settlement.

Given Plaintiffs' counsels' significant experience representing Plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain an excellent result with relatively low expense due to the parties' cooperative exchange of information and frequent and on-going negotiations. A brief biography of each attorney who performed billed work outlined in the Billing Record attached as "Exhibit C" and their rates in this matter are as follows:

i.      Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and have been in practice since 1983. Michael Faillace reflected in Exhibit C as "MF" is billed at a rate of $450 per hour. From 1983 to 2000, Mr. Faillace was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and am a nationally-renowned speaker and writer on employment law. He is also the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

ii.      Gennadiy Naydenskiy is a Litigation Associate of Michael Faillace & Associates P.C. and has been a member of the firm since August 2018. Gennadiy Naydenskiy reflected in Exhibit C as "GN" is billed at a rate of $350 per hour. Prior to joining Michael Faillace and Associates, P.C, Gennadiy Naydenskiy was a solo practitioner from October 2014, focusing primarily on FLSA wage and hour cases. Prior to founding his solo practice, Gennadiy Naydenskiy was an associate for Harrison, Harrison, and Associates a boutique law firm that focus most of their practice on FLSA wage and hour individual, multi-plaintiff, collective and class actions.

September 21, 2021
Page 6

       iii.     Khalil Huey is a Litigation Associate of Michael Faillace & Associates P.C and has been a member of the firm since June 2021. Khalil Huey reflected in Exhibit C as "KH" is billed at a rate of $375 per hour. Prior to joining Michael Faillace and Associates P.C, Khalil Huey was of counsel for the Chandler Law Firm PLLC and an associate for the same firm that focused on labor and employment law for individuals and as labor counsel for several school districts, and large public employee unions in the State of New York

       iv.     Paralegal time reflected in Exhibit C as "PL" is billed at $125 per hour.

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

Respectfully submitted,

/s/ Khalil Huey
Khalil Huey Esq.
MICHAEL FAILLACE & ASSOCIATES, P.C.
Attorneys for the Plaintiffs

Enclosures

Cc:    Aaron Solomon, Esq. (via ECF)
      Saranicole Duaban, Esq. (via ECF)

## SETTLEMENT AGREEMENT AND RELEASE

**WHEREAS**, Jose Adrian San Juan Tolentino and Benjamin Vasquez Ramos (hereinafter, the "Plaintiffs"), filed an action in the Southern District of New York bearing Docket Number 21-CV-00198 (GHW) against Hermes B NY, LLC and PGNV, LLC (hereinafter referred to collectively as, "Empanada Mama") and Socrates Nanas (hereinafter, "Nanas") (Empanada Mama and Nanas are collectively referred to herein as the "Defendants"), alleging claims for unpaid overtime, unlawfully deducted wages, unpaid spread of hours and unpaid minimum wages; and

**WHEREAS**, Plaintiffs' counsel informed Defendants' counsel that they represent six additional clients, Herber Ludim Baten Escalante, Moises Baxin Baxin, Marvin Rolando Suy Ignacio, Uriel Lopez, Wilson Benjamin Vasquez Ramos ,and Adonias Clemente, (collectively, the "opt-in Plaintiffs") who allege that they also have unpaid wage claims against Defendants.

**WHEREAS**, Defendants deny all allegations that Plaintiffs and/or the opt-in Plaintiffs were subjected to any form of wage and hour violations and conveyed this to Plaintiffs and the opt-in Plaintiffs their denial of said allegations; and

**WHEREAS**, Defendants, Plaintiffs, and opt-in Plaintiffs (collectively referred to herein as the, "the Parties") desire to fully and finally resolve and settle in full certain claims that Plaintiffs collectively have, had, or may have against Defendants, by way of this Settlement and Release Agreement ("Agreement"); and

**WHEREAS**, the Parties and their counsel engaged in a mediation on May 19, 2021 to resolve Plaintiffs and the opt-in Plaintiffs' claims with the assistance of, Theo Cheng, a neutral mediator; and

**WHEREAS,** counsel for the Parties have negotiated extensively with the assistance of Mediator Cheng in good faith to reach a settlement acceptable to the Parties which constitutes a

reasonable compromise of Plaintiffs' and opt-in Plaintiffs' claims and Defendants' defenses and the *bona fide* dispute between the Parties; and

**NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth herein, the receipt and sufficiency of which is hereby acknowledged, and incorporating the above "Whereas" clauses in this Agreement, the Parties agree as follows:

1.     In consideration of the total payment by Defendants of the sum of Ninety-Four Thousand Five-Hundred Dollars and Zero Cents ($94,500.00) (the "Settlement Amount"), representing payment to Plaintiffs and the opt-in Plaintiffs for alleged damages, including alleged economic damages, unpaid wages, attorney's fees, costs, and other valuable consideration set forth elsewhere in this Release to which Plaintiffs and opt-in Plaintiffs are not otherwise entitled, Plaintiffs and opt-in Plaintiffs hereby release and forever discharge Defendants, their parent companies, affiliates, predecessors, successors, subsidiaries, and other companies, as well as their officers, directors, shareholders, employees, including but not limited to Nanas, as well as all of Defendants' agents, attorneys, insurers, heirs, executors, administrators, agents, successors, and assigns, (all of whom jointly and severally with Defendants constitute and are hereinafter collectively referred to herein as "Releasees"), both individually and in their/its official capacities, from any and all known and unknown claims, complaints, causes of action, lawsuits, demands, back-wages, benefits, attorneys' fees, pain and suffering, debts, controversies, damages, judgments, in law or equity, of any kind, nature and character, which Plaintiffs and opt-in Plaintiffs, their heirs, executors, administrators, agents, successors, and assigns have, had, or hereafter can have against any of the Releasees from the beginning of time to the date of this Agreement for claims arising under the Fair Labor Standards Act, the New York Labor Law, or any other law, regulation, or ordinance regulating the payment

of wages, including but not limited to, all claims of unpaid compensation, unpaid minimum wages, unpaid overtime wages, unpaid commissions, unpaid bonuses, unpaid tips, improper deductions, unpaid spread of hours, unpaid fringe benefits (including any vacation, paid time off, and sick pay), unpaid accrued benefit time, liquidated damages, and/or statutory penalties (including all alleged damages or penalties due to improper wage notices, improper wage statements purportedly owed to the Plaintiffs and/or the opt-in Plaintiffs). This Release shall include, without limitation, any and all potential claims alleged by the Plaintiffs and the opt-in Plaintiffs against Defendants.

2.      The Parties agree to execute a "Stipulation of Dismissal with Prejudice," in the form annexed hereto as **Exhibit A,** which will be filed with the Court along with the Joint Motion for Approval of the Agreement within ten (10) days after the following conditions are met: (a) Defendants' counsel receives a duly executed Agreement signed and notarized by Plaintiffs and opt-in Plaintiffs; (b) Defendants' counsel receives completed W-4 and W-9 forms from Plaintiffs and opt-in Plaintiffs; (c) Defendants' counsel receives a completed Form W-9 for Plaintiffs' counsel; and (d) Defendants' counsel receives a "Stipulation of Dismissal with Prejudice" signed by Plaintiffs' counsel.

3.      No later than 30 days of the date the Settlement Agreement is approved by the Court, the Settlement Amount shall be paid as follows:

a.  One (1) check payable to "Jose Adrian San Juan Tolentino" in the gross amount of $7,473.06, less all applicable tax withholdings and deductions, representing payment for Jose Adrian San Juan Tolentino's alleged unpaid wages and claims of liquidated damages;

b.  One (1) check payable to "Wilson Benjamin Vasquez Ramos" in the gross amount of $11,402.37, less all applicable tax withholdings and deductions, representing payment for Wilson Benjamin Vasquez Ramos's alleged unpaid wages and claims for liquidated damages;

c.  One (1) check payable to "Heber Ludim Baten Escalante" in the gross amount of $6,764.31, less all applicable tax withholdings and deductions, representing payment for Heber Ludim Baten Escalante's alleged unpaid wages; and claims for liquidated damages;

d.  One (1) check payable to "Moises Baxin Baxin" in the gross amount of $15,167.25, less all applicable tax withholdings and deductions, representing payment for Moises Baxim Baxim's alleged unpaid wages and claims for liquidated damages;

e.  One (1) check payable to "Marvin Rolando Suy Ignacio" in the gross amount of $6,786.99, less all applicable tax withholdings and deductions, representing payment for Marvin Rolando Suy Ignacio's alleged unpaid wages and claims for liquidated damages;

f.  One (1) check payable to "Uriel Lopez" in the gross amount of $2,568.51, less all applicable tax withholdings and deductions, representing payment for Uriel Lopez's alleged unpaid wages; and claims for liquidated damages;

g.  One (1) check payable to "Adonias Clemente" in the gross amount of $6,537.51, less all applicable tax withholdings and deductions,

representing payment for Adonias Clemente's alleged unpaid wages; and claims for liquidated damages; and

h.  One (1) check in the gross amount of $37,8000 made payable to the "Michael Falliace & Associates P.C." representing payment for attorney's fees and costs.

All payments set forth above shall be delivered to the attention of Khalil Huey, Esq., Michael Faillace & Associates, P.C., 60 East 42nd Street, Suite 4510, New York, 10165.

4.     Plaintiffs and the opt-in Plaintiffs acknowledge that they have been paid in full for all time worked, paid correctly in accordance with all applicable wage and hour laws, and that they are owed no other forms of remuneration whatsoever, including, but not limited to, any wages, overtime compensation, vacation, bonus, tips, commission, or accrued benefit pay.

5.     Plaintiffs and the opt-in Plaintiffs agree to jointly and severally hold Releasees harmless, and indemnify Releasees fully, from any payment Releasees may be required to make to any taxing authority as a result of Plaintiffs' and opt-in Plaintiffs' failure to pay taxes that any of them may owe relating to the payment of this Settlement Amount.

6.     Plaintiffs' and opt-in Plaintiffs' further acknowledge and agree that by entering this Agreement, they voluntarily and knowingly waive any and all rights to employment with Releasees, and that they will not seek employment with any Releasee at any time.  Plaintiffs' and opt-in Plaintiffs' further agree that any application for employment with any Releasee will be denied and such denial will not be the basis for a claim of any kind.

7.     Plaintiffs' and opt-in Plaintiffs' promise and represent that they will withdraw, with prejudice, any and all outstanding administrative complaints or charges filed with any federal, state and local agencies/administrative body and will also withdraw with prejudice all

judicial actions, lawsuits, claims, demands or actions pending against any Releasees both individually and in their/its official capacities relating to all claims released herein. Plaintiffs' and opt-in Plaintiffs' will not file any complaints, lawsuits, claims, demands or actions of any kind against Releasees relating to the claims released herein. In the event any such complaints, lawsuits, claims, demands or actions are not withdrawn or are filed due to circumstances beyond the control of the Plaintiffs' and the opt-in Plaintiffs', they promise and represent that they will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or other proceedings connected with or resulting from such complaints, lawsuits, claims, demands or actions, and that the Plaintiffs and the opt-in Plaintiffs will execute such papers or documents as the requesting party determines may be necessary to have said complaint, charge, lawsuit, claim, demand or action dismissed with prejudice. Plaintiffs and opt-in Plaintiffs agree that this Agreement further constitutes a waiver to the recovery of any award of damages resulting from any charge or lawsuit filed by Plaintiffs and opt-in Plaintiffs or by anyone else on their behalf relating to the claims released herein.

8.    Plaintiffs and opt-in Plaintiffs acknowledge that they have received sufficient consideration as set forth in this Agreement. Plaintiffs and opt-in Plaintiffs expressly acknowledge that the release provisions herein shall be given full force and effect in accordance with each and all of the terms and provisions expressed herein, including but not limited to those terms and provisions relating to unknown or unsuspected rights, claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands or causes of action herein specified.

9.    Plaintiffs and opt-in Plaintiffs agree that they shall not make any statement, written, oral or electronic, which in any way disparages Defendants. Notwithstanding the

foregoing, Plaintiffs and the opt-in Plaintiffs shall be permitted to make truthful statements concerning the pursuit of their FLSA claims. Defendant Socrates Nanas agrees that he will not make any statement, written, oral or electronic, which in any way disparages Plaintiffs and/or the opt-in Plaintiffs.

10.     Plaintiffs, opt-in Plaintiffs and Plaintiffs' counsel represent and warrant that as of the execution date of this agreement that they are not aware of and have not solicited any individuals to bring or threaten to bring any action for unpaid wage or otherwise against Releasees or any of them, nor are they cooperating or assisting any attorney or any federal, state, or local agencies/administrative bodies in any other action or proceeding against Releasees or any one of them.

11.     The Parties agree that, in an action arising from any alleged breach by either party, in addition to any remedies available to the prevailing party in such action in law or equity for a breach thereof, the prevailing party in such action shall be entitled to receive from the non-prevailing party an award of reasonable attorney's fees and costs.

12.     This Agreement does not constitute an admission by Releasees of any wrongful action or violation of any federal or state statute, or common law rights, including those relating to the provisions of any law or statute concerning employment actions, or any other possible or claimed violation of law or rights or an admission by Defendants that any of the claims asserted by the Plaintiffs and the opt-in Plaintiffs.

13.     This Agreement shall not be interpreted in favor of or against either Party on account of such Party's counsel having drafted this Agreement.

14.     Plaintiffs and the opt-in Plaintiffs are competent to affect a knowing, voluntary, general, and unlimited release of all claims, as contained herein, and to enter into this

Agreement. Plaintiffs and opt-in Plaintiffs are not affected or impaired by illness, use of alcohol, drugs, medication or other substances or otherwise impaired. Plaintiffs and opt-in Plaintiffs are not a party to any bankruptcy, lien, creditor-debtor or other proceeding which would impair the right to settle all claims released herein, to waive all claims waived herein, and to indemnify Defendants from any claims by or relating to the Plaintiffs and opt-in Plaintiffs.

15.    Plaintiffs and opt-in Plaintiffs acknowledge that they have not divested, hypothecated, or otherwise bargained away any interest she possesses in her purported claims. Plaintiffs and opt-in Plaintiffs acknowledge and represent that they know of no other person or entity that holds a remunerative interest in any plausible legal claims they could assert, and Plaintiffs and opt-in Plaintiffs acknowledge and represent that there are no other persons or entities with standing to bring any plausible legal claims that could have been asserted by Plaintiffs and opt-in Plaintiffs.

16.    This settlement is based upon a good faith determination between the Parties to resolve a disputed claim. The Parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395. The Parties resolved this matter in compliance with both state and federal law and made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms. Plaintiffs and/or the opt-in Plaintiffs will have the sole responsibility to satisfy any lien or claim asserted against the Settlement Amount or arising from the settlement, including any potential future lien by Medicare and/or Medicaid (CMS/DSS/HRA). Plaintiffs and opt-in Plaintiffs will indemnify, defend, and hold Releasees and/or Releasees' insurers harmless from any and all claims, liens, Medicare conditional payments and rights to payment, known or unknown. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages, including multiple

damages from Releasees and/or Releasees' insurers relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Plaintiffs and opt-in Plaintiffs' alleged injuries, claims or lawsuit, Plaintiffs and/or the opt-in Plaintiffs will defend and indemnify Releasees and/or Releasees' insurers, and hold Releasees and/or Releasees' insurers harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

17. Plaintiffs and the opt-in Plaintiffs also confirm that they have not been induced by any representation or promise that does not expressly and unequivocally appear in this Agreement or by any act or omission of Defendants to execute this Agreement.

18. The Parties affirm that no promise, inducement or agreement not expressed in this Agreement has been made, and this Agreement contains the entire agreement of the Parties.

19. This Agreement may only be modified, altered, or changed in writing, signed by the Parties.

20. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

21. This Agreement shall be subject to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.

22. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute on and the same instrument.

23. The Parties agree that they shall execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement.

24.     All other notices and documents set forth herein shall be delivered to counsel for Defendants at the following address: Aaron Solomon, Esq., Kaufman Dolowich & Voluck, LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York 11797; facsimile (516) 681-1101; email: asolomon@kdvlaw.com. Notices to the Plaintiffs and the opt-in Plaintiffs shall be sent to: Khalil Huey, Esq. Michael Faillace & Associates, P.C., 60 East 42nd Street, Suite 4510, New York, New York 10165; email: khuey@faillacelaw.com.

25.     **Plaintiffs and opt-in Plaintiffs represent that they have had a full opportunity to review and consider the terms and conditions of this Agreement and to have discussed them with their respective counsel or financial advisor in their native language, and having had sufficient time to review and consider this Agreement, they acknowledge that they fully understand all of the provisions of this Agreement and have executed same freely and voluntarily.**

[signature page(s) to follow]

[the remainder of this page intentionally left blank]

23.     The Parties agree that they shall execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement.

24.     All other notices and documents set forth herein shall be delivered to counsel for Defendants at the following address: Aaron Solomon, Esq., Kaufman Dolowich & Voluck, LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York 11797; facsimile (516) 681-1101; email: asolomon@kdvlaw.com. Notices to the Plaintiffs and the opt-in Plaintiffs shall be sent to: Khalil Huey, Esq. Michael Faillace & Associates, P.C., 60 East 42nd Street, Suite 4510, New York, New York 10165; email: khuey@faillacelaw.com.

25.     **Plaintiffs and opt-in Plaintiffs represent that they have had a full opportunity to review and consider the terms and conditions of this Agreement and to have discussed them with their respective counsel or financial advisor in their native language, and having had sufficient time to review and consider this Agreement, they acknowledge that they fully understand all of the provisions of this Agreement and have executed same freely and voluntarily.**

IN WITNESS WHEREOF this Agreement and General Release is deemed duly executed as of the ___ day of _____, 2021.

MICHAEL FAILLACE
Notary Public - State of New York
NO. 02FA6120964
Qualified in New York County
My Commission Expires Jan 3, 2025

_____
JOSE ADRIAN SAN JUAN TOLENTINO

On _____, 2021, before me personally came Benjamin Vasquez Ramos, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Agreement and General Release is deemed duly executed as of the ___ day of _____, 2021.

_____
BENJAMIN VASQUEZ RAMOS

On August 31, 2021, before me personally came Moises Baxin Baxin, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 31 day of August, 2021.

_____          _____
NOTARY PUBLIC                                              MOISES BAXIN BAXIN

MICHELLE MENA
Notary Public - State of New York
No. 01ME6420748
Qualified in Bronx County
My Comm. Expires Aug. 16, 2025

On August ___, 2021, before me personally came Marvin Rolando Suy Ignacio, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the ___ day of August, 2021.

_____          _____
NOTARY PUBLIC                                              MARVIN ROLANDO SUY IGNACIO

On August _1_, 2021, before me personally came Uriel Lopez, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.
*SEPTEMBER*

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the _1_ day of August, 2021.
*SEPTEMBER*

_____          _____
NOTARY PUBLIC                                              URIEL LOPEZ

MICHAEL FAILLACE
Notary Public - State of New York
NO. 02FA6120964
Qualified in New York County
My Commission Expires Jan 3, 2025

On August ___, 2021, before me personally came Jose Adrian San Juan Tolentino, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the ___ day of August, 2021.

_____          _____
NOTARY PUBLIC                                              JOSE ADRIAN SAN JUAN TOLENTINO


On August ___, 2021, before me personally came Benjamin Vasquez Ramos, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the ___ day of August, 2021.

_____          _____
NOTARY PUBLIC                                              BENJAMIN VASQUEZ RAMOS


On ~~August~~ September 17, 2021, before me personally came Herber Ludim Baten Escalante, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 17 day of ~~August,~~ September 2021.

_____          _____
NOTARY PUBLIC                                              HERBER LUDIM BATEN ESCALANTE

MICHELLE MENA
Notary Public - State of New York
No. 01ME6420748
Qualified in Bronx County
My Comm. Expires Aug. 16, 2025

On August 31, 2021, before me personally came Moises Baxin Baxin, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 31 day of August, 2021.

_____
NOTARY PUBLIC

_____
MOISES BAXIN BAXIN

MICHELLE MENA
Notary Public - State of New York
No. 01ME6420748
Qualified in Bronx County
My Comm. Expires Aug. 16, 2025

On ~~August~~ September 7, 2021, before me personally came Marvin Rolando Suy Ignacio, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 7 day of ~~August~~ September, 2021.

_____
NOTARY PUBLIC

_____
MARVIN ROLANDO SUY IGNACIO

MICHELLE MENA
Notary Public - State of New York
No. 01ME6420748
Qualified in Bronx County
My Comm. Expires Aug. 16, 2025

On August SEPTEMBER 1, 2021, before me personally came Uriel Lopez, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 1 day of August SEPTEMBER, 2021.

_____
NOTARY PUBLIC

_____
URIEL LOPEZ

MICHAEL FAILLACE
Notary Public - State of New York
NO. 02FA6120964
Qualified in New York County
My Commission Expires Jan 3, 2025

On August ~~3~~ *SEPTEMBER* , 2021, before me personally came Adonias Clemente, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 3 day of August, 2021.

_____          _____
NOTARY PUBLIC                                         ADONIAS CLEMENTE

MICHELLE MENA
Notary Public - State of New York
No. 01ME6420748
Qualified in Bronx County
My Comm. Expires Aug. 16, 2025

On August ~~3~~ *SEPTEMBER* , 2021, before me personally came Wilson Benjamin Vasquez Ramos, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 3 day of August, 2021. *SEPTEMBER*

_____          _____
NOTARY PUBLIC                                         WILSON BENJAMIN VASQUEZ RAMOS

MICHELLE MENA
Notary Public - State of New York
No. 01ME6420748
Qualified in Bronx County
My Comm. Expires Aug. 16, 2025

_____
HERMES B NY, LLC AND PGNV, LLC
By:
Title:

_____
SOCRATES NANAS

Solely as to paragraph 10 in the above agreement.

_____
MICHAEL FALLACE & ASSOCIATES, P.C.
By: Khalil Huey Esq.
Title: Litigation Associate

On August ~~September~~ 3 , 2021, before me personally came Adonias Clemente, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 3 day of August, 2021.

_____
NOTARY PUBLIC

MICHELLE MENA
Notary Public - State of New York
No. 01ME6420748
Qualified In Bronx County
My Comm. Expires Aug. 16, 2025

_____
ADONIAS CLEMENTE

On August ~~September~~ 3 , 2021, before me personally came Wilson Benjamin Vasquez Ramos, to me known, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

IN WITNESS WHEREOF this Settlement Agreement and Release is deemed duly executed as of the 3 day of August, 2021. ~~September~~

_____
NOTARY PUBLIC

MICHELLE MENA
Notary Public - State of New York
No. 01ME6420748
Qualified In Bronx County
My Comm. Expires Aug. 16, 2025

_____
WILSON BENJAMIN VASQUEZ RAMOS

_____
HERMES B NY, LLC AND PGNV, LLC
By:
Title:

_____
SOCRATES NANAS

Solely as to paragraph 10 in the above agreement

_____
MICH█████████████IATES, P.C.
By: Khalil Huey Esq.
Title: Litigation Associate

Privileged Settlement Communication                                                                                                Subject to  Revision / Correction

| Plaintiff | Pay Period From | To | No. of Weeks in Pay Period | Hours Per Week in Period | No. of SOH Days Per Wk in Period | Calc. Regular Rate of Pay | Calc. OT Rate of Pay | Minimum Wage Rate | Minimum Overtime (OT) | Lawful Weekly Pay | "Credited" Weekly Pay | Underpayment Per Week | Unpaid Wages & OT | Liq. Damages on Wages & OT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jose Adrian San Juan Tolentino | 11/1/2015 | 12/31/2015 | 9 | 39.5 | 0 | $ 6.50 | $ 9.75 | $ 8.75 | $ 13.13 | $ 345.63 | $ 256.75 | $ 88.88 | $ 799.88 | 799.88 |
| | 1/1/2016 | 12/31/2016 | 52 | 39.5 | 0 | $ 7.50 | $ 12.00 | $ 9.00 | $ 13.50 | $ 355.50 | $ 296.25 | $ 59.25 | $ 3,081.00 | 3,081.00 |
| | 1/1/2017 | 2/15/2017 | 6 | 39.5 | 0 | $ 9.15 | $ 14.64 | $ 11.00 | $ 16.50 | $ 434.50 | $ 361.43 | $ 73.08 | $ 438.45 | 438.45 |
| | 2/16/2017 | 10/14/2017 | 34 | 39.5 | 0 | $ 9.15 | $ 14.64 | $ 11.00 | $ 16.50 | $ 434.50 | $ 361.43 | $ 73.08 | $ 2,484.55 | 2,484.55 |
| | 10/15/2017 | 12/31/2017 | 11 | 39.5 | 0 | $ 9.15 | $ 13.73 | $ 11.00 | $ 16.50 | $ 434.50 | $ 361.43 | $ 73.08 | $ 803.83 | 803.83 |
| | 1/1/2018 | 1/31/2018 | 4 | 39.5 | 0 | $ 10.85 | $ 16.28 | $ 13.00 | $ 19.50 | $ 513.50 | $ 428.58 | $ 84.93 | $ 339.70 | 339.70 |
| | 2/1/2018 | 12/31/2018 | 48 | 39.5 | 0 | $ 10.85 | $ 16.28 | $ 13.00 | $ 19.50 | $ 513.50 | $ 428.58 | $ 84.93 | $ 4,076.40 | 4,076.40 |
| | 1/1/2019 | 3/14/2019 | 10 | 37 | 0 | $ 12.50 | $ 18.75 | $ 15.00 | $ 22.50 | $ 555.00 | $ 462.50 | $ 92.50 | $ 925.00 | 925.00 |
| | 3/15/2019 | 11/1/2019 | 33 | 37 | 0 | $ 12.50 | $ 18.75 | $ 15.00 | $ 22.50 | $ 555.00 | $ 462.50 | $ 92.50 | $ 3,052.50 | 3,052.50 |
| | | | 0 | | | | | | | | | | | |
| | | | 0 | | | | | | | | | $ 16,001.30 | 16,001.30 |
| Wilson Benjamin Vasquez Ramos | 1/1/2015 | 3/31/2015 | 13 | 72 | 0 | $ 6.50 | $ 12.38 | $ 8.75 | $ 13.13 | $ 770.00 | $ 468.00 | $ 302.00 | $ 3,926.00 | 3,926.00 |
| | 4/1/2015 | 12/31/2015 | 39 | 38.5 | 0 | $ 6.50 | $ 12.38 | $ 8.75 | $ 13.13 | $ 336.88 | $ 250.25 | $ 86.63 | $ 3,378.38 | 3,378.38 |
| | 1/1/2016 | 12/31/2016 | 52 | 37 | 0 | $ 7.50 | $ 12.00 | $ 9.00 | $ 13.50 | $ 333.00 | $ 277.50 | $ 55.50 | $ 2,886.00 | 2,886.00 |
| | 1/1/2017 | 2/15/2017 | 6 | 34.25 | 0 | $ 9.15 | $ 12.00 | $ 11.00 | $ 16.50 | $ 376.75 | $ 313.39 | $ 63.36 | $ 380.18 | 380.18 |
| | 2/16/2017 | 11/30/2017 | 41 | 34.25 | 0 | $ 9.15 | $ 14.65 | $ 11.00 | $ 16.50 | $ 376.75 | $ 313.39 | $ 63.36 | $ 2,597.86 | 2,597.86 |
| | 1/1/2018 | 2/15/2018 | 6 | 31 | 0 | $ 10.85 | $ 14.65 | $ 13.00 | $ 19.50 | $ 403.00 | $ 336.35 | $ 66.65 | $ 399.90 | 399.90 |
| | 2/16/2018 | 12/31/2018 | 45 | 31 | 0 | $ 10.85 | $ 14.65 | $ 13.00 | $ 19.50 | $ 403.00 | $ 336.35 | $ 66.65 | $ 2,999.25 | 2,999.25 |
| | 1/1/2019 | 3/15/2019 | 10 | 16.5 | 0 | $ 12.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 247.50 | $ 206.25 | $ 41.25 | $ 412.50 | 412.50 |
| | 3/16/2019 | 12/31/2019 | 41 | 16.5 | 0 | $ 12.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 247.50 | $ 206.25 | $ 41.25 | $ 1,691.25 | 1,691.25 |
| | | | | | | | | | | | | | $ 18,671.31 | 18,671.31 |
| Heber Ludim Baten Escalante | 7/1/2017 | 12/30/2017 | 26 | 25 | 0 | $ 9.15 | $ 14.65 | $ 11.00 | $ 16.50 | $ 275.00 | $ 228.75 | $ 46.25 | $ 1,202.50 | 1,202.50 |
| | 12/31/2017 | 12/30/2018 | 52 | 25 | 0 | $ 10.85 | $ 14.65 | $ 13.00 | $ 19.50 | $ 325.00 | $ 271.25 | $ 53.75 | $ 2,795.00 | 2,795.00 |
| | 12/31/2018 | 11/15/2019 | 46 | 25 | 0 | $ 12.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 375.00 | $ 312.50 | $ 62.50 | $ 2,875.00 | 2,875.00 |
| | 11/16/2019 | 12/30/2019 | 6 | 22 | 0 | $ 12.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 330.00 | $ 275.00 | $ 55.00 | $ 330.00 | 330.00 |
| | 12/31/2019 | 2/15/2020 | 7 | 22 | 0 | $ 12.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 330.00 | $ 275.00 | $ 55.00 | $ 385.00 | 385.00 |
| | | | | | | | | | | | | | $ 7,587.50 | 7,587.50 |
| Marvin Rolando Suy Ignacio | 4/1/2018 | 12/31/2018 | 39 | 32 | 0 | $ 10.85 | $ 14.65 | $ 13.00 | $ 19.50 | $ 416.00 | $ 347.20 | $ 68.80 | $ 2,683.20 | 2,683.20 |
| | 1/1/2019 | 3/31/2019 | 13 | 32 | 0 | $ 11.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 368.00 | $ 112.00 | $ 112.00 | $ 1,456.00 | 1,456.00 |
| | 4/1/2019 | 12/31/2019 | 39 | 32 | 0 | $ 12.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 480.00 | $ 400.00 | $ 80.00 | $ 3,120.00 | 3,120.00 |
| | 1/1/2020 | 3/15/2020 | 11 | 32 | 0 | $ 12.85 | $ 14.65 | $ 15.00 | $ 22.50 | $ 480.00 | $ 411.20 | $ 68.80 | $ 756.80 | 756.80 |
| | | | | | | | | | | | | | $ 8,016.00 | 8,016.00 |
| Moises Baxin Baxin | 8/1/2016 | 12/31/2016 | 22 | 34 | 0 | $ 7.50 | $ 14.65 | $ 9.00 | $ 13.50 | $ 306.00 | $ 255.00 | $ 51.00 | $ 1,122.00 | 1,122.00 |
| | 1/1/2017 | 12/31/2017 | 52 | 34 | 0 | $ 9.15 | $ 14.65 | $ 11.00 | $ 16.50 | $ 374.00 | $ 311.10 | $ 62.90 | $ 3,270.80 | 3,270.80 |
| | 1/1/2018 | 12/31/2018 | 52 | 34 | 0 | $ 10.85 | $ 14.65 | $ 13.00 | $ 19.50 | $ 442.00 | $ 368.90 | $ 73.10 | $ 3,801.20 | 3,801.20 |
| | 1/1/2019 | 5/30/2019 | 21 | 34 | 0 | $ 12.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 510.00 | $ 425.00 | $ 85.00 | $ 1,785.00 | 1,785.00 |
| | 6/1/2019 | 12/31/2019 | 30 | 25.5 | 0 | $ 12.50 | $ 14.65 | $ 15.00 | $ 22.50 | $ 382.50 | $ 318.75 | $ 63.75 | $ 1,912.50 | 1,912.50 |
| | 1/1/2020 | 12/31/2020 | 52 | 25.5 | 0 | $ 12.85 | $ 14.65 | $ 15.00 | $ 22.50 | $ 382.50 | $ 327.68 | $ 54.83 | $ 2,850.90 | 2,850.90 |
| | | | | | | | | | | | | | $ 14,742.40 | 14,742.40 |
| Uriel Lopez | 7/1/2016 | 12/31/2016 | 26 | 3 | 6 | $ 15.00 | $ 14.65 | $ 13.50 | $ 20.25 | $ 45.00 | $ - | $ 45.00 | $ 1,170.00 | 1,170.00 |
| | 1/1/2017 | 1/15/2017 | 2 | 3 | 6 | $ 15.00 | $ 14.65 | $ 16.50 | $ 24.75 | $ 49.50 | $ - | $ 49.50 | $ 99.00 | 99.00 |
| | | | | | | | | | | | | | $ 1,269.00 | 1,269.00 |
| Adonias Clemente Ramos | 8/1/2017 | 12/31/2017 | 22 | 35.5 | 0 | $ 9.15 | $ 13.73 | $ 11.00 | $ 16.50 | $ 390.50 | $ 550.00 | $ 159.50 | $ 3,509.00 | 3,509.00 |
| | 1/1/2018 | 12/31/2018 | 52 | 35.5 | 0 | $ 10.85 | $ 16.28 | $ 13.00 | $ 19.50 | $ 461.50 | $ 600.00 | $ 138.50 | $ 7,202.00 | 7,202.00 |
| | 1/1/2019 | 12/31/2019 | 52 | 35.5 | 0 | $ 12.50 | $ 18.75 | $ 15.00 | $ 22.50 | $ 532.50 | $ 600.00 | $ 67.50 | $ 3,510.00 | 3,510.00 |
| | 1/1/2020 | 3/17/2020 | 11 | 35.5 | 0 | $ 12.50 | $ 18.75 | $ 15.00 | $ 22.50 | $ 532.50 | $ 650.00 | $ 117.50 | $ 1,292.50 | 1,292.50 |
| | | | | | | | | | | | | | $ 15,513.50 | 15,513.50 |
| | | | | | | | | | | | | TOTAL: | $ 81,801.01 | 81,801.01 |

1 This chart is based upon preliminary information and the expected testimony of Plaintiffs.
2 Plaintiffs reserve the right to correct or amend this chart.
3 This Chart was prepared without the benefit of discovery, or the benefit of Defendants' required wage and hour records under the FLSA and NYLL.

Privileged Settlement Communication                                                                                    Subject to  Revision / Correction

| Plaintiff | Pay Period From | To | Unpaid Spread of Hours (SOH) Pay | Liq. Damages on unpaid SOH | Annual Wage Notice | Weekly Wage Statement | Pre Jud. Interest (PJI) on OT & Wages | (PJI) Spread of Hours | Delivery Charge | Total Per Period | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Jose Adrian San Juan Tolentino | 11/1/2015 | 12/31/2015 | $ - | $ - | $ 5,000.00 | | $ 418.48 | $ - | $ 403.65 | $ 7,421.88 | |
| | 1/1/2016 | 12/31/2016 | $ - | $ - | | | $ 1,449.74 | $ - | $ 2,332.20 | $ 9,943.94 | |
| | 1/1/2017 | 2/15/2017 | $ - | $ - | | | $ 184.04 | $ - | $ 269.10 | $ 1,330.04 | |
| | 2/16/2017 | 10/14/2017 | | | | | $ 954.97 | $ - | $ 1,524.90 | $ 7,448.97 | |
| | 10/15/2017 | 12/31/2017 | | | | | $ 277.35 | $ - | $ 493.35 | $ 2,378.36 | |
| | 1/1/2018 | 1/31/2018 | $ - | $ - | | | $ 112.64 | $ - | $ 179.40 | $ 971.44 | |
| | 2/1/2018 | 12/31/2018 | | | | | $ 1,168.28 | $ - | $ 2,152.80 | $ 11,473.88 | |
| | 1/1/2019 | 3/14/2019 | $ - | $ - | | | $ 218.69 | $ - | $ 448.50 | $ 2,517.19 | |
| | 3/15/2019 | 11/1/2019 | $ - | $ - | | | $ 606.88 | $ - | $ 1,480.05 | $ 8,191.93 | |
| | | | $ - | | | $ 5,000.00 | $ - | $ 5,391.06 | | $ 9,283.95 | $ 51,677.61 | 13.20% |
| | | | | | | | | | | | |
| Wilson Benjamin Vasquez Ramos | 1/1/2015 | 3/31/2015 | $ - | $ - | $ 5,000.00 | | $ 2,334.27 | | $ 1,457.63 | $ 16,643.90 | |
| | 4/1/2015 | 12/31/2015 | $ - | $ - | | | $ 1,856.65 | | $ 4,372.88 | $ 12,986.27 | |
| | 1/1/2016 | 12/31/2016 | $ - | $ - | | | $ 1,357.98 | | $ 5,830.50 | $ 12,960.48 | |
| | 1/1/2017 | 2/15/2017 | $ - | $ - | | | $ 159.58 | | $ 672.75 | $ 1,592.68 | |
| | 2/16/2017 | 11/30/2017 | $ - | $ - | | | $ 983.47 | | $ 4,597.13 | $ 10,776.32 | |
| | 1/1/2018 | 2/15/2018 | $ - | $ - | | | $ 131.87 | | $ 672.75 | $ 1,604.42 | |
| | 2/16/2018 | 12/31/2018 | $ - | $ - | | | $ 854.02 | | $ 5,045.63 | $ 11,898.15 | |
| | 1/1/2019 | 3/15/2019 | $ - | $ - | | | $ 97.47 | | $ 1,121.25 | $ 2,043.72 | |
| | 3/16/2019 | 12/31/2019 | $ - | $ - | | | $ 323.53 | | $ 4,597.13 | $ 8,303.15 | |
| | | | $ - | $ - | | $ 5,000.00 | $ 204,692.44 | | $ 28,367.63 | $ 78,809.08 | 20.12% |
| | | | | | | | | | | | |
| Heber Ludim Baten Escalante | 7/1/2017 | 12/30/2017 | $ - | $ - | $ 5,000.00 | | $ 430.77 | | $ 4,664.40 | $ 12,500.17 | |
| | 12/31/2017 | 12/30/2018 | $ - | $ - | | | $ 812.41 | | $ 9,328.80 | $ 15,731.21 | |
| | 12/31/2018 | 11/15/2019 | $ - | $ - | | | $ 592.86 | | $ 8,252.40 | $ 14,595.26 | |
| | 11/16/2019 | 12/30/2019 | $ - | $ - | | | $ 53.20 | | $ 1,076.40 | $ 1,789.60 | |
| | 12/31/2019 | 2/15/2020 | $ - | $ - | | | $ 57.70 | | $ 1,255.80 | $ 2,083.50 | |
| | | | $ - | $ - | $ 5,000.00 | | $ 1,946.93 | | $ 24,577.80 | $ 46,699.73 | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| Marvin Rolando Suy Ignacio | 4/1/2018 | 12/31/2018 | $ - | $ - | $ 5,000.00 | | $ 749.48 | | $ 9,183.04 | $ 20,298.91 | |
| | 1/1/2019 | 3/31/2019 | $ - | $ - | | | $ 341.17 | | $ 3,061.01 | $ 6,314.18 | |
| | 4/1/2019 | 12/31/2019 | $ - | $ - | | | $ 590.68 | | $ 9,183.04 | $ 16,013.72 | |
| | 1/1/2020 | 3/15/2020 | $ - | $ - | | | $ 110.62 | | $ 2,590.09 | $ 4,214.31 | |
| | | | | | $ 5,000.00 | | $ 1,791.95 | | $ 24,017.18 | $ 46,841.13 | |
| | | | | | | | | | | | |
| Moises Baxin Baxin | 8/1/2016 | 12/31/2016 | $ - | $ - | $ 5,000.00 | | $ 498.48 | | $ 6,364.22 | $ 14,106.70 | |
| | 1/1/2017 | 12/31/2017 | $ - | $ - | | | $ 1,244.27 | | $ 15,042.69 | $ 22,828.56 | |
| | 1/1/2018 | 12/31/2018 | $ - | $ - | | | $ 1,103.93 | | $ 15,042.69 | $ 23,749.02 | |
| | 1/1/2019 | 5/30/2019 | $ - | $ - | | | $ 405.06 | | $ 6,074.93 | $ 10,049.99 | |
| | 6/1/2019 | 12/31/2019 | $ - | $ - | | | $ 347.69 | | $ 8,678.48 | $ 12,851.17 | |
| | 1/1/2020 | 12/31/2020 | $ - | $ - | | | $ 314.44 | | $ 15,042.69 | $ 21,058.93 | |
| | | | | | $ 5,000.00 | $ - | $ 3,913.88 | | $ 66,245.69 | $ 104,644.37 | |
| | | | | | | | | | | | |
| Uriel Lopez | 7/1/2016 | 12/31/2016 | $ 2,106.00 | $ 2,106.00 | $ 5,000.00 | $ 5,000.00 | $ 524.28 | | | $ 17,076.28 | |
| | 1/1/2017 | 1/15/2017 | $ 198.00 | $ 198.00 | | | $ 41.93 | | | $ 635.93 | |
| | | | $ 2,304.00 | $ 2,304.00 | $ 5,000.00 | $ 5,000.00 | $ 566.21 | | | $ 17,712.21 | |
| | | | | | | | | | | | |
| Adonias Clemente Ramos | 8/1/2017 | 12/31/2017 | $ - | $ - | $ 5,000.00 | $ 5,000.00 | $ 1,243.17 | | $ 5,591.30 | $ 18,261.17 | |
| | 1/1/2018 | 12/31/2018 | $ - | $ - | | | $ 2,091.59 | | $ 13,215.80 | $ 16,495.59 | |
| | 1/1/2019 | 12/31/2019 | $ - | $ - | | | $ 703.46 | | $ 13,215.80 | $ 7,723.46 | |
| | 1/1/2020 | 3/17/2020 | $ - | $ - | | | $ 188.61 | | $ 2,795.65 | $ 2,773.61 | |
| | | | $ - | $ - | $ 5,000.00 | $ 5,000.00 | $ 4,226.83 | | $ 34,818.55 | $ 45,253.83 | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | $ 2,304.00 | $ 2,304.00 | $ 35,000.00 | $ 10,000.00 | $ 222,529.30 | $ - | $ 187,310.79 | $ 391,637.96 | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | Filing Date | | 10/7/2019 | | | | | | |
| | | | FLSA | | 10/7/2016 | | | | | | |
| | | | NYLL | | 10/7/2013 | | | | | | |
| | | | Amendment | | 4/9/2011 | | | | | | |
| | | | Today | | 9/21/2021 | | | | | | |

### *Michael Faillace & Associates, P.C.*
60 East 42nd Street
Suite 4510
New York, NY 10165

Ph:(212) 317-1200          Fax:(212) 317-1620

Jose Adrian  Juan Tolentino                                    September 21, 2021

|  |  |
|---|---|
| File #: | Empanada2019 |
| **Attention:** | Inv #:          1265 |

**RE:**

| DATE | DESCRIPTION | HOURS | AMOUNT | LAWYER |
|------|-------------|-------|--------|--------|
| Jul-06-20 | reviewed facts of the case  with CS and provided her with guidance as to the language to use in the complaint | 0.10 | 45.00 | MF |
| Jul-13-20 | reviewed court notice of offer and acceptance ofRule 68 offer; sent notice to staff to update office records;  filed notice in the proper folder for future use | 0.30 | 135.00 | MF |
| Jul-15-20 | email coreespondence with CS | 0.10 | 12.50 | PL |
| Jul-16-20 | reviewed case file, phone call with CS to discuss case | 0.20 | 25.00 | PL |
| Jul-23-20 | Interviewed new client and outlined his rights and obligations;  sent intake to assigned paralegal with directions as to the next documentsto prepare for the litigation | 0.90 | 405.00 | MF |
|  | prepared retainer for client, updated his intake, obtained signature | 0.50 | 62.50 | PL |
| Jul-27-20 | Antonio Vasquez intake | 0.90 | 112.50 | PL |
| Aug-02-20 | Initial consultation with MF | 0.60 | 270.00 | MF |
| Aug-05-20 | had telephone conference  with client and updated him on the status of his case;  had | 0.20 | 90.00 | MF |

| | | | | |
|---|---|---|---|---|
| | telephone conference with FG and client and agreed to expedite the case | | | |
| | reviewed case file, prepared retainer for Antonio Vasquez, sent him retainer, phone call to explain retainer and to help him sign it | 0.50 | 62.50 | PL |
| Aug-19-20 | reviewed client's checks, updated chart | 1.50 | 187.50 | PL |
| Aug-20-20 | reviewed client's checks, updated chart | 3.20 | 400.00 | PL |
| | phone call with process server to discuss service, affidavits | 0.30 | 37.50 | PL |
| Aug-27-20 | directed staff to submit their input to FG | 0.10 | 45.00 | MF |
| Aug-28-20 | Intake with Uriel Lopez to be added to Empanada Mama | 1.00 | 125.00 | PL |
| Aug-29-20 | Initial consultation with MF | 0.90 | 405.00 | MF |
| Sep-01-20 | reviewed case file | 0.10 | 12.50 | PL |
| Sep-09-20 | updated client on the status of the case; sent email to staff requesting that they expedite the work we need todraft the complaint | 0.20 | 90.00 | MF |
| Sep-17-20 | calls with MF and new client to discuss case | 0.20 | 25.00 | PL |
| Sep-18-20 | discussed with FG and determined we have 10 new clients | 0.10 | 45.00 | MF |
| | looked through MFs email re : was assigned Moises Baxin Baxin | 0.20 | 25.00 | PL |
| | called Moises Baxin Baxin and he confirmed he has not handed in the checks but he can bring them in next week | 0.20 | 25.00 | PL |
| Jan-14-21 | Reviewed court notice of appearance of plaintiff's counsel ; directed staff to update case chart ; filed order in the proper folder for future reference | 0.30 | 135.00 | MF |
| | telephone call w/ paralegals and review client docs | 0.30 | 105.00 | GN |
| Jan-21-21 | filed AOS for individual defendant and saved the AOS into the case file. | 0.20 | 25.00 | PL |

| Date | Description | Hours | Amount | Initials |
|------|-------------|-------|--------|----------|
| Feb-03-21 | telephone call w/ opposing counsel re: complaint and extension of time, email to do to pl | 0.30 | 105.00 | GN |
| Mar-12-21 | pre mediation calll | 0.60 | 210.00 | GN |
| Apr-02-21 | telephone call w/ court re: defendants mtd | 0.40 | 140.00 | GN |
| May-19-21 | Revised damages chart | 0.80 | 100.00 | PL |
| Jun-19-21 | Revised damages chart with additional plaintiff | 0.10 | 12.50 | PL |
| Jun-25-21 | Reviewed FIle | 2.00 | 750.00 | KH |
| Jun-30-21 | Drafted Notice of Appearence for KH | 0.50 | 0.00 | PL |
| Jul-26-21 | Review of Settlement Agreement | 1.00 | 375.00 | KH |
| | Emails with opposing counsel | 0.50 | 187.50 | KH |
| Aug-16-21 | Drafted Fairness Letter | 1.25 | 468.75 | KH |
| | Emailed opposing counsel | 0.05 | 18.75 | KH |
| Aug-17-21 | Emails with Opposing Counsel | 0.10 | 37.50 | KH |
| | Reviewed and editted Settlement Agreement | 0.50 | 187.50 | KH |
| Aug-26-21 | Reviewd, editted settlement agreement to correct error | 0.75 | 281.25 | KH |
| | Redadjusted damages pro rata per client | 0.50 | 187.50 | KH |
| Aug-30-21 | Reviewed changes and editted settlement agreemetn | 0.75 | 281.25 | KH |
| Sep-07-21 | Email with opposing counsel | 0.05 | 18.75 | KH |
| Sep-17-21 | Emails with opposing counsel | 0.10 | 37.50 | KH |
| Sep-21-21 | Editted Cheeks Motion | 1.00 | 375.00 | KH |
| | Totals | 24.35 | $6,681.25 | |

**DISBURSEMENTS**

|  |  |  |
|---|---|---:|
| | Filing Fee | 402.00 |
| Jan-15-21 | Process Server: PGNV LLC | 73.00 |
| | Process Server : Hermes B NY LLC | 73.00 |
| | Totals | $548.00 |

**Total Fee & Disbursements**                                    **$7,229.25**

**Balance Now Due**                                              **$7,229.25**